Filed 5/20/13  Ibanez v. S&S Worldwide CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CARLOS IBANEZ, | B238269 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC045095) |
| v. | |
| S&S WORLDWIDE, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Burt Pines, Judge.  Affirmed.

Law Offices of Martin L. Stanley, Martin L. Stanley and Jeffrey R. Lamb for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Brittany H. Bartold, Cary L. Wood and Stephen K. Hiura for Defendants and Respondents.

Plaintiff Carlos Ibanez appeals from a judgment entered in favor of defendants S&S Worldwide, Inc. and S&S-Arrow, LLC (collectively, the S&S defendants), after the trial court granted the S&S defendants' motion for summary judgment. We affirm the judgment.

## BACKGROUND

Carlos Ibanez suffered traumatic brain injury, among other injuries, at the Six Flags Magic Mountain amusement park on August 30, 2008, when he was hit by a roller coaster (which was called the "Ninja") as he was walking in the area in which the Ninja was operating.[1] Ibanez, through his guardian ad litem, filed a lawsuit against Six Flags Theme Parks, Inc., Six Flags Operations, Inc., and Six Flags Magic Mountain (collectively, Six Flags), alleging claims for negligence, premises liability, strict liability, and negligence per se. The complaint was amended several times, including amendments to add the S&S defendants and Arrow Dynamics as defendants. The operative seconded amended complaint alleges five claims against all defendants, for negligence, premises liability, strict liability, common carrier liability, and negligence per se. This appeal involves only the negligence and strict liability claims against the S&S defendants.[2]

---

[1]    Although there is no evidence in the record about the circumstances surrounding the accident, the brief Ibanez filed in opposition to the S&S defendants' demurrer to the second amended complaint states that Ibanez had stepped through a gap in the fence surrounding the Ninja and walked up a hill to retrieve his Dodgers cap, which had flown off his head while he was on another ride.

[2]    The trial court sustained the S&S defendants' demurrer to the common carrier liability and negligence per se causes of action; Ibanez does not challenge that ruling on appeal. Ibanez also does not challenge the summary judgment as to the premises liability cause of action, as his attorney conceded at the hearing on the summary judgment motion that he was not asserting liability against the S&S defendants under that theory because they did not own the property at issue. Therefore, we need not address those causes of

2

The complaint alleges that "Defendants, and each of them" (a) "negligently and carelessly designed, built, positioned, and operated Ninja so low to the ground that they knew or should have known it may collide with people walking nearby"; (b) "negligently and carelessly designed, built, positioned, and operated Ninja without adequate warnings of the dangers associated with its operations and placement"; (c) "negligently and carelessly designed and built the fencing and area surrounding Ninja without adequate warnings of the dangers associated with Ninja's operations and placement"; (d) "negligently and carelessly designed and built the fencing and area surrounding Ninja so as to allow park guests and other persons to easily enter the area surrounding Ninja"; (e) "negligently and carelessly did not provide adequate supervision and security of the area surrounding Ninja"; (f) "negligently and carelessly designed, manufactured, and assembled, the roller coaster 'Ninja' making it unsafe for its intended use by reason of a defect including but not limited to its 'footings' being defectively and negligently designed"; and (g) "negligently and carelessly designed, manufactured, and assembled the roller coaster Ninja and the area surrounding the Ninja in violation of Section 14 of American Society for Testing and Materials (ASTM) F 1159-03a."

The S&S defendants moved for summary judgment. They submitted the declaration of Rich Allen, the chief executive officer of both entities, stating that: (1) the Six Flags Magic Mountain theme park is not, and has never been, owned, operated, managed, maintained, or controlled by the S&S defendants; (2) the S&S defendants did not own, design, manage, build, or maintain the fencing or area surrounding the Ninja roller coaster; (3) the S&S defendants did not design, manufacture, assemble, position, operate, or supply, nor have they ever owned, the

---

action, and our discussion will focus only on facts and law relating to the negligence and strict liability causes of action.

Ninja roller coaster; (4) the Ninja roller coaster was built by Arrow Dynamics; (5) the S&S defendants are not, and have never been, affiliated with Arrow Dynamics; (6) S&S Arrow purchased certain assets (which did not include the Ninja roller coaster located at Six Flags Magic Mountain) from Arrow Dynamics in a bankruptcy proceeding in October 2002; (7) the asset purchase agreement was approved and authorized by the bankruptcy court in an order stating that S&S Arrow did not assume Arrow Dynamics' liabilities, debts, commitments, or obligations, and that S&S Arrow shall not, under any circumstances, be deemed a successor of or to Arrow Dynamics; (8) the asset purchase did not amount to a consolidation or merger of Arrow Dynamics and S&S Arrow; and (9) the asset purchase did not cause or contribute to Arrow Dynamics' bankruptcy.

In addition to Allen's declaration, the S&S defendants submitted a copy of the bankruptcy court's November 12, 2002 order authorizing and approving the asset purchase agreement.[3] The bankruptcy court found, among other things, that the asset purchase agreement was "negotiated, proposed and entered into by [Arrow Dynamics] and [S&S Arrow] without collusion, in good faith, and after arm's-length and lengthy bargaining, which bargaining included the active involvement of the Committee [of Unsecured Creditors]" and that the terms and conditions of the sale and the purchase price "are fair and reasonable under the circumstances" and "represent the highest or otherwise best offer for the Acquired Assets." In addition, the bankruptcy court made several orders, including the following relevant to this case: (1) "Except as provided in the Asset Purchase Agreement with respect to the Assumed Obligations, [S&S Arrow] is not assuming, nor shall it in any way whatsoever be liable or responsible, as a

---

[3] The S&S defendants asked the trial court to take judicial notice of the bankruptcy court's order. The trial court granted the request, noting there was no opposition to it.

4

successor or otherwise, for any liabilities, debts, commitments or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise) of [Arrow Dynamics] or any liabilities, debts, commitments or obligations in any way whatsoever relating to or arising from the Acquired Assets or [Arrow Dynamics'] operations or use of the Acquired Assets on or prior to the Closing Date"; and (2) "Under no circumstances shall [S&S Arrow] be deemed a successor of or to [Arrow Dynamics] for any interest against or in [Arrow Dynamics] or the Acquired Assets of any kind or nature whatsoever. Except as provided in the Asset Purchase Agreement with respect to Assumed Obligations, no person or entity . . . shall assert by suit or otherwise against [S&S Arrow] or its successors in interest any claim that they had, have or may have against [Arrow Dynamics]."

Based on this evidence, the S&S defendants argued they could not be held directly liable for negligence or strict liability because they did not design, build, own, or operate the Ninja roller coaster or the fencing surrounding it, and that Ibanez could not establish successor liability. Therefore, they were entitled to judgment as a matter of law.

In opposition, Ibanez submitted the transcript of Allen's deposition, which Ibanez contended showed that Allen had no personal knowledge of the circumstances surrounding Arrow Dynamics' bankruptcy or the details of the S&S defendants' asset purchase. He also submitted a letter that Robert B. Crates (who was Chairman of S&S Worldwide at the time) sent to Arrow Dynamics submitting a bid for S&S Arrow to acquire the assets of Arrow Dynamics (the letter was sent on May 29, 2002, before S&S Arrow was formed). In addition, Ibanez produced evidence that S&S Arrow used the name "Arrow Dynamics, Inc." on documents it sent to Six Flags California after the asset purchase, and that S&S Arrow provided Six Flags Magic Mountain with replacement parts for the Ninja. Based on this

5

evidence, Ibanez argued that the S&S defendants failed to meet their initial burden on summary judgment (in essence arguing that Allen's declaration was incompetent for lack of personal knowledge), and that, in any event, Ibanez's proffered evidence raised triable issues as to whether the S&S defendants could be held liable as successors to Arrow Dynamics, and whether they could be directly liable because they had an independent duty to warn purchasers and users of defective products.

The trial court granted the summary judgment motion and entered judgment in favor of the S&S defendants. Ibanez appeals.

## DISCUSSION

Ibanez makes the same arguments on appeal that he made in the trial court: he contends the S&S defendants failed to meet their burden on summary judgment, that he produced evidence raising a triable issue as to whether the S&S defendants are liable as successors to Arrow Dynamics, and that his evidence also raised triable issues as to whether the S&S defendants are directly liable for failing to warn of the defective design and operation of the Ninja roller coaster.

A.      *Law Regarding Successor Liability*

To properly analyze Ibanez's contentions, we must briefly review the law regarding successor liability.

As a general rule, a corporation that purchases the principal assets of another corporation "does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray v. Alad Corp.*

6

(1977) 19 Cal.3d 22, 28.) In *Ray v. Alad Corp.*, the Supreme Court created an additional exception to the general rule of nonliability, to provide a remedy, under certain limited circumstances, against the successor when a person has been injured by the predecessor's product. This limited exception, sometimes called the "product line successor" rule, allows the injured party to recover under a strict liability theory when three elements are present: "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." (*Id.* at p. 31.)

With this law in mind, we turn to Ibanez's contentions on appeal.

B. *The S&S Defendants Met Their Initial Burden on Summary Judgment*

Ibanez contends that the S&S defendants failed to meet their initial burden of production on their motion for summary judgment. We disagree.

In the trial court, a defendant moving for summary judgment must present evidence that one or more elements of the plaintiff's claim cannot be established or that there is a complete defense to the claim. If, and only if, the defendant meets that burden of production, the burden shifts to plaintiff to show that a triable issue of material fact exists as to that claim or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The plaintiff shows that a triable issue of material fact exists by pointing to evidence that would allow a reasonable trier of fact to find that fact in favor of the plaintiff. (*Ibid.*) If the plaintiff fails to do so, the defendant is entitled to judgment as a matter of law.

7

As noted above, in moving for summary judgment, the S&S defendants submitted the declaration of their chief executive officer, Rich Allen, and the order of the bankruptcy court approving the sale of most of Arrow Dynamics' assets to S&S Arrow. That evidence established that (1) the S&S defendants did not own, design, manufacture, operate, or supply the Ninja roller coaster or the fencing surrounding it; (2) the S&S defendants purchased certain assets from Arrow Dynamics in a bankruptcy proceeding; (3) the asset purchase did not cause Arrow Dynamics' bankruptcy; (4) the asset purchase did not amount to a consolidation or merger of Arrow Dynamics and S&S Arrow; (5) the asset purchase agreement was negotiated in good faith, without collusion, and after arm's-length bargaining, resulting in terms and conditions and a purchase price that were fair and reasonable under the circumstances; and (6) the S&S defendants did not assume Arrow Dynamics' liabilities and may not be deemed a successor to Arrow Dynamics. These facts are sufficient to establish that the S&S defendants are not directly liable for Ibanez's injuries because they did not own, supply, or control the Ninja roller coaster or the fence surrounding it, and they are not liable as successors to Arrow Dynamics because none of the exceptions to successor nonliability apply.

Ibanez, however, argues that this evidence did not satisfy the S&S defendants' burden of production because Allen was not personally involved in S&S Arrow's purchase of Arrow Dynamics' assets and therefore did not have personal knowledge of the details of the purchase. Allen's lack of personal involvement in the negotiations surrounding S&S Arrow's purchase does not negate his testimony about the acquisition of assets by defendant. As the current chief executive officer of both S&S defendants, Allen is competent to testify as to the fact of and terms of the purchase. To the extent Ibanez contends there is evidence that might indicate some sort of collusion or subterfuge was involved in

the asset purchase, that evidence goes to whether Ibanez has raised a triable issue of fact rather than whether the S&S defendants satisfied their burden of production.

In short, Allen's declaration, along with the bankruptcy court's order, were sufficient to prove that Ibanez could not establish essential elements of his claims or that the S&S defendants had a complete defense to those claims. Thus, the burden shifted to Ibanez to show that a triable issue of material fact exists as to his negligence or strict liability claims. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

C.      *Ibanez's Evidence Does Not Raise a Triable Issue*

Ibanez contends he presented sufficient evidence to raise a triable issue of fact with regard to whether (1) the asset purchase was a de facto merger or S&S Arrow is a mere continuation of Arrow Dynamics; (2) there was a collusive agreement between the S&S defendants and Arrow Dynamics to use the bankruptcy proceedings to shield the S&S defendants from Arrow Dynamics' liabilities; (3) the product line successor rule applies; and (4) the S&S defendants had an independent duty to warn purchasers and users of Arrow Dynamics' products because they had a continuing relationship with Arrow Dynamics' customers. We are not convinced.

1.      *The Evidence Does Not Show a De Facto Merger or Continuation*

Ibanez presented evidence that S&S Arrow used the name "Arrow Dynamics, Inc." on at least one document it sent to Six Flags California in 2003 (after the asset purchase in October 2002), and that S&S Arrow provided Six Flags Magic Mountain with replacement parts for the Ninja. He also submitted deposition testimony by Allen that S&S Arrow employed about 10 of Arrow Dynamics' former employees for a short time after the asset purchase, and

9

continues to employ two of those former Arrow Dynamics employees. He contends this evidence shows that the asset purchase amounted to a de facto merger or mere continuation of Arrow Dynamics. It does not.

As the Supreme Court explained in *Ray v. Alad Corp.*, *supra*, 19 Cal.3d 22, an asset purchase will be deemed a consolidation or merger for the purpose of imposing successor liability only "where one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other's creditors [citation] or where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation." (*Id.* at p. 28.) Similarly, "a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts . . . only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." (*Id.* at p. 29.) As one Court of Appeal has noted, "although other factors are relevant to both the de facto merger and mere continuation exceptions, the common denominator, which must be present in order to avoid the general rule of successor nonliability, is the payment of inadequate consideration." (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 627.)[4]

Here, none of the evidence Ibanez relies upon addresses whether the S&S defendants paid adequate consideration for the Arrow Dynamics assets. In

---

[4] The appellate court explained that even though the Supreme Court identified two factual elements and stated that "one or both" must be present for the continuation exception to apply, *all* of the cases the Supreme Court cited in support of its statement involved the payment of inadequate cash consideration, while some *also* involved near complete identity of ownership, management, or directorship after the asset transfer. (*Franklin v. USX Corp.*, *supra*, 87 Cal.App.4th at pp. 626-627, citing *Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 29.)

10

contrast, the S&S defendants submitted evidence that adequate consideration was given for those assets: the bankruptcy court's order finding that the terms and conditions of the purchase agreement and the purchase price "(i) are fair and reasonable under the circumstances, (ii) represent the highest or otherwise best offer for the Acquired Assets, (iii) will provide a recovery for [Arrow Dynamics'] creditors that is equal to or greater than what would be provided by any other available alternative and (iv) constitute reasonably equivalent value and fair consideration under and within the meaning of the Bankruptcy Code and other applicable laws." Thus, we conclude Ibanez failed to raise a triable issue as to whether the S&S defendants could be held liable under the de facto merger or mere continuation exceptions to the successor nonliability rule.

2.      *Ibanez's Evidence is Insufficient to Show Collusion or Fraud*

Ibanez contends he raised a triable issue as to whether the fourth exception to the successor nonliability rule applies, based upon a letter that he contends indicates there was collusion between the S&S defendants and Arrow Dynamics to avoid Arrow Dynamics' liabilities through the use of the bankruptcy process. Ibanez makes much of the fact that the letter, printed on letterhead identifying the sender as "S&S-Arrow Acquisition, LLC," was sent in May 2002, months before S&S Arrow was formed and the bankruptcy sale was completed. He argues that the fact that the letter was sent before S&S Arrow was formed, and that it refers to "prior discussions [S&S Worldwide had] with shareholders and management with respect to a prospective investment transaction," shows that the S&S defendants induced Arrow Dynamics to file for bankruptcy to avoid future tort liability.

Ibanez misunderstands both the letter and his burden on a motion for summary judgment.

11

To defeat a defendant's motion for summary judgment, the plaintiff must point to evidence that would allow a reasonable trier of fact to find in favor of the plaintiff. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) The letter does not accomplish this.

The fact that the letter was sent before S&S Arrow actually was formed does not, as Ibanez suggests, show that the S&S defendants were attempting something subversive. The letter clearly states that S&S-Arrow Acquisition, LLC is "a *to be formed* subsidiary or affiliate of S&S Worldwide, Inc." (Italics added.) In other words, the letter acknowledges that S&S Worldwide intended to, but had not yet formed, S&S Arrow in order to purchase Arrow Dynamics' assets. No reasonable trier of fact could conclude from the timing of the letter or the fact that it was on S&S Arrow's letterhead that the eventual transfer of Arrow Dynamics' assets to the S&S defendants was "for the fraudulent purpose of escaping liability for the seller's debts." (*Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 28.)

Nor is there anything in the letter to indicate that the S&S defendants induced Arrow Dynamics to file for bankruptcy. Instead, it is clear from the content of the letter that the bankruptcy proceeding had begun well before the letter was sent. The letter refers to the Unsecured Creditors' Committee that had been formed, as well as the bankruptcy court's approval of the assets available for purchase, the bidding and auction procedures, and the sale date. While Ibanez is correct that the letter refers to prior discussions S&S Worldwide had with shareholders and management regarding "a prospective investment transaction," it cannot be inferred from that reference that the S&S defendants and Arrow Dynamics agreed that Arrow Dynamics would file for bankruptcy so that S&S Arrow could avoid liability for Arrow Dynamics' debts. Any such inference would be based upon pure speculation, and therefore is insufficient to defeat summary judgment. (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th

12

149, 161 ["When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork"].) In short, Ibanez failed to raise a triable issue as to the fourth exception to successor nonliability.

3.     *The Product Line Successor Rule Does Not Apply*

Ibanez argues that the evidence before the trial court was sufficient to satisfy the requirements of the product line successor rule set forth in *Ray v. Alad Corp.*, *supra*, 19 Cal.3d 22.  The evidence in this case, however, conclusively negates the first element of the rule, and therefore the rule does not apply.

It is well settled that, to be liable under the product line successor rule, the successor must have caused the destruction of the plaintiff's remedies.  (See *Stewart v. Telex Communications, Inc.* (1991) 1 Cal.App.4th 190, and cases cited therein.)  Where the original manufacturer files a voluntary petition for bankruptcy, and the asserted successor merely purchases the manufacturer's assets in the bankruptcy proceeding, it is the manufacturer's bankruptcy, and not the subsequent purchase of assets that destroys the plaintiff's remedies.  (*Id.* at p. 200.)  That is what happened here.  There is no evidence that the S&S defendants caused Arrow Dynamics to file for bankruptcy.  Thus, there is no evidence that the S&S defendants caused the destruction of Ibanez's remedies, and the trial court properly ruled that the product line successor rule does not apply.

4.     *Ibanez's Theory for Direct Liability Does Not Apply*

Relying upon *Gee v. Tenneco, Inc.* (9th Cir. 1980) 615 F.2d 857, Ibanez contends the S&S defendants are directly liable for negligence and strict product liability because they had an independent duty to warn purchasers and users of

13

defects in the Ninja roller coaster manufactured by Arrow Dynamics due to the S&S defendants' continuing relationship with Arrow Dynamics' customer, Six Flags. He asserts the S&S defendants were not entitled to summary judgment because there was no evidence that they warned Six Flags of the alleged defect, i.e., that the roller coaster was designed, built, and positioned to operate so close to the ground that it could collide with people walking nearby.

We disagree that the S&S defendants had a duty to warn Six Flags about any alleged defect in the design or operation of the Ninja roller coaster. First, as noted by the court in *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, "California has not adopted an independent duty to warn theory of liability." (*Id.* at p. 698.) But even if we were to adopt the theory here, the duty of a successor to warn of defects in its predecessor's product would not arise under the facts of this case.

The independent duty to warn arises only when there is a "continuation of the relationship between the successor and the customers of the predecessor." (*Gee v. Tenneco, Inc.*, *supra*, 615 F.2d at p. 866.) "Factors which may be considered in order to determine if a nexus or relationship sufficient to create a duty to warn exists are whether the successor assumed the predecessor's service contracts, whether the particular product was covered under a service contract with the predecessor's customer, whether the successor actually serviced the product, and whether the successor knew of the alleged defects and knew how to reach the predecessor's customers." (*Burroughs v. Precision Airmotive Corp.*, *supra*, 78 Cal.App.4th at p. 696.) In this case, the undisputed evidence is that the S&S defendants did not assume any service contracts between Arrow Dynamics and Six Flags (if any existed), and did not own or service the Ninja roller coaster. They simply supplied parts to Six Flags. The relationship between the S&S defendants and Six Flags (i.e., as supplier of parts) does not come close to the kind of

14

relationship that could give rise to a duty to warn of the defect alleged here, related to the positioning of the roller coaster itself.  Thus, the S&S defendants had no duty to warn and cannot be held directly liable for negligence or strict liability.

## DISPOSITION

The judgment is affirmed.  The S&S defendants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


SUZUKAWA, J.


15